UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| REMEMBER ENTERPRISES, INC., ) | Case No. 09-12179 |
| ) | |
| Debtor. ) | Chapter 7 |
| _____ ) | |

**MEMORANDUM OPINION**

This case came on for hearing on January 28, 2010 for consideration of the Application for Private Sale of Personal Property (the "Application"), filed by Everett B. Saslow, Jr., the duly-appointed Chapter 7 trustee (the "Trustee"), on December 11, 2009, and the Motion to Dismiss (the "Motion to Dismiss"), filed by MPR/Volce Macchina, LLC ("MPR") on December 31, 2009.  Jason B. Buckland appeared on behalf of MPR, Dirk W. Siegmund appeared on behalf of the above-referenced debtor (the "Debtor"), Robert E. Price, Jr. appeared on behalf of the United States Bankruptcy Administrator, Charles H. Winfree appeared on behalf of Kotis Properties, Inc. ("Kotis"), and Mr. Saslow appeared in his capacity as Trustee.  Upon the evidence presented at the hearing, the arguments of counsel, and a review of the entire official file, the Court makes the following findings of fact and conclusions of law.

**I. JURISDICTION**

The Court has jurisdiction over the subject matter of these proceedings pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.  These are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A), (N),and (O), which this Court has

1

the jurisdiction to hear and determine.

## II. FACTS

The essential facts are undisputed. Until the filing of its Chapter 7 petition on November 13, 2009, the Debtor operated a Melting Pot restaurant franchise at 2924-A Battleground Avenue, Greensboro, North Carolina. Kevin Burbine is the Debtor's President and sole shareholder.

Since 2005, the Debtor operated at the Battleground Avenue location pursuant to a lease with Kotis. On April 16, 2008, the Debtor entered into a lease with a new landlord, MPR. Pursuant to the MPR lease, the Debtor proposed to operate its restaurant at 4401 West Wendover Avenue, Suite 201, Greensboro, North Carolina. After entering into the lease, MPR alleges that it spent $220,000 in upfitting the West Wendover Avenue premises. However, the Debtor never took possession of the new premises, nor did it pay any of the amounts due under the MPR lease.

On August 14, 2009, MPR sent a demand letter to the Debtor, requesting that it cure its default under the MPR lease. On October 5, 2009, MPR filed a complaint against the Debtor in state court, seeking specific performance, back rent, upfit costs, and attorneys' fees under the lease. On November 13, 2009, the Debtor filed its Chapter 7 petition. Schedule F reflects total unsecured debt in the amount of $102,490.90, including a $10,000 debt to MPR that is listed as contingent, unliquidated, and disputed. MPR claims that it is owed over $250,000.00 as a result of the Debtor's breach of the MPR lease. There are no secured or priority claims listed on the schedules.

Schedule B values the Debtor's personal property, including the restaurant equipment and inventory, as well as an $8,000 checking account, at $37,344.85. The 2009 Guilford County

personal property tax listing valued the personal property of the Debtor at $97,500. On November 20, 2009, the Trustee consulted with Max Coleman, an auctioneer, who inspected the Debtor's personal property, noted that the restaurant equipment was over 12 years old, and informed the Trustee that it would not likely bring more than $12,000 at an auction. The Trustee agreed to sell the property to Mr. Burbine for $10,000 if Mr. Burbine would assume the Debtor's post-petition rental and utilities obligations for the Battleground Avenue property.[1] The Trustee offered the property for sale to MPR, but MPR refused the Trustee's offer.[2]

On December 11, 2009, the Trustee filed the Application. At the hearing, Mr. Burbine testified that he would like to operate another Melting Pot franchise at the Battleground Avenue location, possibly through an entity that he had formed named V Cheesy Phoenix, Inc. ("Cheesy Phoenix"), but no agreement with the Melting Pot franchisor had been reached.

The Trustee testified that he made demand on Mr. Burbine to repay a preference in the amount of $27,500, and counsel for the Debtor stated on the record that the money would be repaid to the estate. The petition reflects that Daniel Burbine, Kevin Burbine's father, received a payment of $22,000 within the one year immediately preceding the filing of this case, which the Trustee will also attempt to recover. The Trustee's Interim Report, filed on January 11, 2010, reflects that the estate currently has cash of $4,236.72.

On December 31, 2009, MPR filed an objection to the Application as well as to the Motion to Dismiss. MPR argues that the case should be dismissed under Sections 105 and 305 of the Bankruptcy Code because the petition was filed in bad faith. MPR asserts that, absent the

---

[1] The rental obligation to Kotis under the lease is $5,278 per month.

[2] Tellingly, MPR repeated its refusal at the hearing.

3

bankruptcy, North Carolina law would impose successor liability on a buyer of substantially all of the assets of a debtor corporation when the transfer was done for the purpose of defrauding the corporation's creditors or the successor corporation is a "mere continuation" of the selling corporation. See Budd Tire Corp. v. Pierce Tire Co., Inc., 370 S.E.2d 267 (N.C. Ct. App. 1988). MPR objects to the Application "because (1) it being used for an improper purpose in contravention of the Bankruptcy Code and (2) it fails to provide proper value for the assets." MPR believes that the Debtor's bankruptcy was filed for the sole purpose of allowing Mr. Burbine to purchase of the assets of the Debtor while avoiding successor liability.

### III. ANALYSIS

A.    The Motion to Dismiss

    1.    11 U.S.C. § 305(a)

Section 305(a) provides that "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if— (1) the interests of creditors and the debtor would be better served by such dismissal or suspension . . . ." 11 U.S.C. § 305(a). MPR argues that because a corporate Chapter 7 debtor does not receive a discharge under Section 727(a), the only purpose of this case is to permit a fair and orderly liquidation the Debtor's assets. Because the Debtor's estate has "virtually no assets to distribute," MPR argues that this case has no legitimate bankruptcy purpose. Therefore, it is in the best interests of the Debtor and its creditors to dismiss the case.

Abstention under Section 305 is a matter within a bankruptcy court's discretion. An order "dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals . . . [or] by the

Supreme Court . . . ." 11 U.S.C. § 305(c). The legislative history to Section 305 states that the "bankruptcy court, based on its experience and discretion, is vested with the power of decision." S. Rep. No. 95-989, at 36 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5822.

In determining whether the interests of creditors and the debtor would be better served by dismissal, courts have considered factors such as "fairness, priorities in distribution, capacity for dealing with frauds and preferences, speed, economy, freedom from litigation, the importance of a discharge to the debtor, a pending state proceeding, the small number of remaining creditors, the necessary complexity of the bankruptcy process, efficiency and economy of administration." In re Golf Course Marketing Corp., No. 95-76646, slip op. at 4 (Bankr. D.S.C. June 16, 1996) (1996 WL 33340787). In support of the Motion, MPR cites to decisions in which "courts have dismissed Chapter 7 cases filed by non-individuals where there were no significant assets to distribute to creditors because they serve no bankruptcy purpose." In each such case, the debtor had no assets or de minimus assets. See In re Hydratech Util., Inc., 384 B.R. 612, 615 (Bankr. M.D. Fla. 2008) (debtor corporation had "conducted no operations for years and had no assets"); In re International Zinc Coatings & Chem. Corp., 355 B.R. 76, 85 (Bankr. N.D. Ill. 2006) (debtor corporation had "long since ceased doing business, and its estate had no assets"); In re Deacon Plastics Mach., Inc., 49 B.R 982, 984 (Bankr. D. Mass. 1985) (debtor had no assets, and showed "no possibility of obtaining any in the future"); In re Conference of African Union First Colored Methodist Protestant Church, 184 B.R. 207, 223 (Bankr. D. Del. 1995) (debtor had $500 in assets, the schedules were bogus, and the bankruptcy filing was "the latest tactical maneuver" in "a four-year struggle with its principal adversary").

The facts of this case are different. In this case, there are relatively substantial assets

available for distribution to creditors, including $4,236.87 in cash held by the Trustee, $10,000.00 from the sale of the restaurant's personal property, $27,500.00 that will be recovered from Mr. Burbine as a preference, and potentially another $22,000.00 to be recovered from Daniel Burbine as a preference. The recovery of these sums and other estate assets could lead to a meaningful dividend for creditors.[3] Without this bankruptcy, preferences could not be recovered. Because it appears that a meaningful dividend will be distributed to over twenty creditors, abstention is not appropriate.

2.  11 U.S.C. § 707(a)

Although MPR ignores it, Section 707(a) is the proper Code provision under which to consider the Motion to Dismiss. Section 707(a) provides that a court may dismiss a case under Chapter 7 "for cause," and three nonexclusive examples are provided. 11 U.S.C. § 707(a). In re Zick, 931 F.2d 1124 (6th Cir. 1991), is the seminal case in this area. Although the Fourth Circuit has not had occasion to interpret Section 707(a), courts in the Fourth Circuit have done so, following the Zick analysis. See, e.g., McDow v. Smith, 295 B.R. 69, 80 n.22 (E.D. Va. 2003); In re Parker, No. 08-04126, slip op. at 2 (Bankr. E.D.N.C. Feb. 3, 2009) (2009 WL 249884).

Relying on the Fourth Circuit's analysis in Carolin Corp. v. Miller, 886 F.2d 693, 698-700 (4th Cir. 1989), the McDow court held that "just as the Fourth Circuit held that 'cause' in § 1112(b) includes bad faith, based in part on the examples provided in the statute, so too is it appropriate to conclude that 'cause' in § 707(a) includes bad faith as a basis for discretionary

---

[3] It is impossible to predict precisely what dividend will be distributed to creditors in this case. The schedules list total unsecured claims in the amount of $102,490.90, including $10,000.00 to MPR. Section 502(b)(6) limits the "claim of a lessor for damages resulting from the termination of a lease of real property" and will likely reduce MPR's alleged $250,000.00 claim significantly.

dismissal." Id. at 76. The court concluded that "under § 707(a), a debtor's bad faith acts or omissions may, in the totality of the circumstances, constitute cause for dismissal in the sound discretion of the bankruptcy court." Id. at 75. Noting that most courts "sensibly employ a totality of the circumstances test focusing on a variety of factors," Id. at 79, the McDow court listed the factors identified by the Sixth Circuit in Zick:

> (1) The debtor's concealment or misrepresentation of assets and/or sources of income, such as the improper or unexplained transfers of assets prior to filing;
> (2) The debtor's lack of candor and completeness in his statements and schedules, such as the inflation of his expenses to disguise his financial well-being;
> (3) The debtor has sufficient resources to repay his debts, and leads a lavish lifestyle, continuing to have excessive and continued expenditures;
> (4) The debtor's motivation in filing is to avoid a large single debt incurred through conduct akin to fraud, misconduct, or gross negligence, such as a judgment in pending litigation, or a collection action;
> (5) The debtor's petition is part of a "deliberate and persistent pattern" of evading a single creditor;
> (6) The debtor is "overutilizing the protection of the Code" to the detriment to his creditors;
> (7) The debtor reduced his creditors to a single creditor prior to filing the petition;
> (8) The debtor's lack of attempt to repay creditors;
> (9) The debtor's payment of debts to insider creditors;
> (10) The debtor's "procedural gymnastics" that have the effect of frustrating creditors;
> (11) The unfairness of the debtor's use of the bankruptcy process.

Id. at 80 n.22 (citing Zick, 931 F.2d at 1129; In re Griffieth, 209 B.R. 823, 826 (Bankr. N.D.N.Y. 1996); In re Spagnolia, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995); In re Hammonds, 139 B.R. 535, 542 (Bankr. D. Colo. 1992)).

Applying the Zick factors to the facts of this case, the Court cannot conclude that the Debtor's case was filed in bad faith. The first three factors require little discussion. The Debtor has neither concealed nor misrepresented its assets. Although the Debtor apparently failed to list

7

payments made to two creditors in the 90 days before its bankruptcy,[4] no other omissions were alleged, so the Court cannot conclude that the Debtor lacked candor in its bankruptcy schedules. The Debtor clearly does not have sufficient assets to pay its debts.

The fourth factor bears a close resemblance to the allegations made by MPR, which is that the Debtor filed bankruptcy to avoid the debt to MPR and the successor liability that would attach to the sold assets under North Carolina law. Were the Debtor's actions "akin to fraud, misconduct, or gross negligence, such as a judgment in pending litigation, or a collection action?" MPR filed an action to collect damages due under the MPR lease, and that lawsuit was pending when the bankruptcy was filed. The McDow court, after finding that the debtor in that case could easily have paid his largest creditor if he had only modified his extravagant lifestyle, addressed the fourth factor:

> Yet, there is no evidence of any fraudulent, or otherwise wrongful conduct either in connection with the accumulation of the debt or the filing of the Chapter 7 petition. Indeed, while courts have dismissed petitions by debtors who seek to discharge primarily a single large obligation, while reaffirming or repaying other remaining debts, the debtor here did not incur his debt through "misconduct, fraud, or gross negligence" as most courts have required as a prerequisite to dismissal for bad faith.

McDow, 295 B.R. at 82. Similarly, there is no evidence in this case that the Debtor's conduct was fraudulent or that its debt to MPR was incurred wrongfully. Moreover, MPR will receive the same treatment as other creditors in this case; it will be paid on a pro rata basis, so the Debtor does not seek to discharge MPR's debt while reaffirming or repaying other debts.

---

[4]Mr. Burbine admitted that the Debtor failed to list royalty payments made to the Melting Pot, Inc. of 4.5% of sales, or around $4,500 each month, and lease payments made to Kotis of $5,278 per month. If such payments were made within the preference period, then they may also be recoverable by the Trustee for the benefit of the estate.

Consideration of the remaining Zick factors also fails to produce any support for a finding of bad faith. Since the Debtor has over twenty creditors, the Court cannot conclude that the Debtor's petition was filed to avoid paying a single creditor. MPR may be the Debtor's single largest creditor, but all unsecured creditors will be treated equally. The Court can find no instance in which the Debtor has over utilized the protections of the Bankruptcy Code. None of the Debtor's creditors are insiders, and all of them will be paid on a pro rata basis. The Court finds no evidence of "procedural gymnastics" and no frustration other than the normal frustration of creditors who will not be paid in full. The Court concludes that the Debtor's bankruptcy is no less fair than the thousands of other bankruptcies over which this Court has presided.

After considering the totality of the circumstances, the Court finds no cause for dismissal of this case.[5]

**B.    The Application for Private Sale**

MPR asserts that if Mr. Burbine or Cheesy Phoenix purchased the Debtor's assets outside of bankruptcy, then the purchaser would be liable for the Debtor's debts. Thus, MPR argues, Mr. Burbine's purchase of the Debtor's assets, coupled with his stated intention to use the purchased assets to open another Melting Pot franchise, contravenes the purpose of Chapter 7 by allowing Mr. Burbine "to continue to operate his profitable Melting Pot franchise in avoidance of his

---

[5]Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). MPR urges this Court to use its equitable powers under Section 105 to dismiss the case, but Section 105 provides no such authority. A court may use its equitable powers under Section 105 only when they are "necessary or appropriate to carry out the provisions" of the Code. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) (equitable powers of § 105 "must and can only be exercised within the confines of the Bankruptcy Code"). As discussed above, the applicable Code provisions do not direct dismissal.

9

previously incurred debt to MPR."

MPR has not provided, nor has the Court identified, any authority for denying the proposed sale on this basis. On the contrary, many courts have articulated sound policy reasons for allowing such sales free and clear of claims for successor liability. See Douglas v. Stamco, No. 09-1390, slip op. at 2 (2d Cir. Feb. 1, 2010) (2010 WL 337043) ("[I]t is evident that the potential chilling effect of allowing a [successor liability] claim subsequent to the sale would run counter to a core aim of the Bankruptcy Code, which is to maximize the value of the assets and thereby maximize potential recovery to the creditors."); In re Paris Industries Corp., 132 B.R. 504, 507 n.7 (D. Me. 1991) ("Generally, allowing state court product liability suits based on successor liability, when the bankruptcy court's order of sale specifically precluded such a transfer of liability, would severely hamper the ability of bankruptcy courts and trustees to dispose of a debtor's assets. Such suits would inevitably diminish the value to be realized in a sale by the estate, and in some cases, discourage sales altogether."); Forde v. Kee-Lox Manufacturing Co., Inc., 437 F. Supp. 631, 633-634 (W.D.N.Y. 1977), aff'd on other grounds, 584 F.2d 4 (2d Cir. 1978) (court sets out two policies against allowing successor liability claims after a bankruptcy sale; first, if a plaintiff asserts a claim grounded on successor liability after a bankruptcy sale, then he, in effect, receives a priority over the claims that were paid in accordance with the Bankruptcy Code, resulting in a rearrangement of the established priority scheme; second, potential successor liability claims would have a negative impact on the trustee's ability to sell assets of the estate at a fair price); In re Pan American Hosp. Corp., 364 B.R. 832, 838 (Bankr. S.D. Fla. 2007) ("Section 363 assists bankruptcy courts in maximizing recovery to creditors, since purchasers can enter a judicial arena where they are ultimately protected from

successor liability in an attempt to encourage the sale of assets and enhance pro rata return to all pre-sale creditors. In its wisdom, Congress enacted § 363 to provide incentives for purchasers to come into the bankruptcy court and buy troubled businesses for more value than that which might be affixed to the business outside of a Bankruptcy Court. The aspect of receiving free and clear title for assets stands as one of the bedrocks of enhancing recovery to creditors in distressed business environments."); In re White Motor Credit Corp., 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (court held that a bankruptcy court sale free and clear of liens, claims and interests bars successor liability claims; bankruptcy courts have the power to approve sales of assets free and clear of any interest that could be brought against the bankruptcy estate during bankruptcy, either through § 363(f) or the bankruptcy court's equitable powers); Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.), 56 B.R. 186, 189-90 (Bankr. N.D. Ga. 1986) (holding that § 363(f) permitted the sale of assets free and clear and precluded successor liability in product liability suit against purchaser for cause of action that arose prior to date of sale); see also George W. Kuney, Misinterpreting Bankruptcy Code Section 363(f) and Undermining the Chapter 11 Process, 76 Am. Bankr. L.J. 235, 267 (2002) ("[T]he dominant interpretation is that § 363(f) can be used to sell property free and clear of claims that could otherwise be assertable against the buyer of the assets under the common law doctrine of successor liability."). There is no dispute that, in the Fourth Circuit, a sale pursuant to Section 363(f) is free and clear of any claim of successor liability. UMWA 1992 Benefit Plan v. Leckie Smokeless Coal Co., 99 F.3d 573, 585 (4th Cir. 1996) (holding that a bankruptcy court could extinguish successor liability claim under the Coal Industry Retiree Health Benefit Act of 1992 pursuant to 11 U.S.C. § 363(f)).

MPR also argues that the sale price in the Application for Private Sale is insufficient.

Given the auctioneer's estimated value of $12,000.00, the typically depressed value of used restaurant equipment, and the fact that no other buyer (including MPR) has offered a higher price, the Court finds that $10,000.00 plus the assumption of the estate's rental and utility obligations is a fair price for the property. Therefore, the Court will grant the Application.

### **IV. CONCLUSION**

      The result reached here may understandably offend some on the ground that the principal of a debtor ought not to be able to purchase the debtor's assets in bankruptcy and avoid any successor liability that might ensue from state law. Importantly, however, Section 707(a) does not embody this sentiment. Any dissatisfaction with this result should therefore be addressed to Congress for it is that body, and not this Court, that has the power to alter the result.

      This case was filed in good faith and not for any improper purpose. Creditors will receive a much greater benefit from the proposed sale and the further administration of this case than they would from a dismissal of the case. Therefore, the Court will deny the Motion to Dismiss. In addition, the Trustee's proposed sale is fair and reasonable under the circumstances and will benefit the estate. Therefore, the Court will grant the Application as well.

      This opinion constitutes the Court's findings of fact and conclusions of law. Separate orders shall be entered pursuant to Fed. R. Bankr. P. 9021.

Date: February 5, 2010

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| REMEMBER ENTERPRISES, INC., | ) | CASE NO. 09-12179 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |

**PARTIES IN INTEREST**

Everett B Saslow, Jr., Trustee

D. Beth Langley, Esquire

Jason B. Buckland, Esquire

Dirk W. Siegmund, Esquire

Charles H. Winfree, Esquire

Michael D. West, Bankruptcy Administrator